**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Troy Kelly, | CIV 15-0455-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Michael Troy Kelly's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits alleging disability beginning April 1, 2010. (Transcript of Administrative Record ("Tr.") at 16, 179-87.) His application was denied initially and on reconsideration. (Tr. at 16, 64-91.) Thereafter, Plaintiff requested a hearing before an administrative law judge, and a hearing was held on May 9, 2013. (Tr. at 16, 32-63.) On June 28, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 13-31.) The Appeals Council denied Plaintiff's request for review (Tr. at 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2010 – the alleged onset date – through his date last insured of December 31, 2012. (Tr. at 18.) At step two, she found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, herniated disc, spondylosis and radiculopathy, history of diverticulitis, colostomy and takedown, hernia repair, a major depressive disorder, and anxiety disorder. (Tr. at 18.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 19-20.) After consideration of the entire record, the ALJ found that, through the date last insured, Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to performing the mental demands of simple work tasks."[1] (Tr. at 20-24.) The ALJ determined that Plaintiff was unable to perform past relevant work, but through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. at 24-25.) Therefore, the ALJ concluded that Plaintiff

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1  was not under a disability from April 1, 2010, through December 31, 2012, the date last
2  insured. (Tr. at 25.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; (2) failing to properly consider his subjective complaints; and (3) failing to properly consider lay witness or third-party statements. Plaintiff requests that the Court remand for determination of benefits.

**A.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Dale Ratcliffe, D.O., relying instead upon the opinions of the state agency reviewing physicians and other objective medical evidence to discount Dr. Ratcliffe's opinion.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other

1  substantial evidence in the record," then it should not be given controlling weight. <u>Orn v.
2  Astrue</u>, 495 F.3d 624, 631 (9th Cir. 2007).

3        If a treating physician's opinion is not contradicted by the opinion of another
4  physician, then the ALJ may discount the treating physician's opinion only for "clear and
5  convincing" reasons. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1164 (quoting <u>Lester</u>, 81 F.3d at 830). If
6  a treating physician's opinion is contradicted by another physician's opinion, then the ALJ
7  may reject the treating physician's opinion if there are "specific and legitimate reasons that
8  are supported by substantial evidence in the record." <u>Id.</u> (quoting <u>Lester</u>, 81 F.3d at 830).

9        Since the opinion of Dr. Ratcliffe was contradicted by the state agency reviewing
10 physicians, as well as, other objective medical evidence in the record, the specific and
11 legitimate standard applies.

12       Historically, the courts have recognized the following as specific, legitimate reasons
13 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
14 the absence of regular medical treatment during the alleged period of disability; the lack of
15 medical support for doctors' reports based substantially on a claimant's subjective complaints
16 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
17 medical evidence. <u>See, e.g.</u>, <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Flaten
18 v. Secretary of Health and Human Servs.</u>, 44 F.3d 1453, 1463-64 (9th Cir. 1995); <u>Fair v.
19 Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).

20       Citing to treatment records from Lincoln Wellness and Family Care (Tr. at 404-52),
21 the ALJ first noted that magnetic resonance imaging of Plaintiff's lumbar spine taken in June
22 2011 demonstrated no acute lumbar spine fracture (Tr. at 21). The records indicated no
23 moderate or severe canal stenosis, but noted a small posterior annular tear at L3-L4 and
24 L5-Sl, and a desiccated disc at L3-L4, L4-L5 and L5-S1 with varying degrees of neural
25 foramina narrowing. The ALJ additionally found that according to records from John C.
26 Lincoln Hospital, Advanced Pain Management, and Desert Pain and Rehabilitation (Tr. at
27 370-96, 779-85, 792-835), Plaintiff reported good benefit from steroid injections and some
28

1  relief from epidural injections, and noted pain improvement with medication (Tr. at 21).
2  Plaintiff was observed to be able to sit, stand, and walk without difficulty.

3        The ALJ found that when examined in February 2013 at John C. Lincoln - Your
4  Family Medicine (Tr. at 1166-78), Plaintiff's spine was of normal contour with no deformity
5  or swelling (Tr. at 22). There was no neurological or motor defect detected; straight leg
6  raising was negative; and Plaintiff walked with a normal gait. Further, records from Desert
7  Pain and Rehabilitation failed to indicate any abdominal pain (Tr. at 792-835, 1078-1156).

8        The ALJ concluded that the objective and clinical findings do not indicate disabling
9  impairments. (Tr. at 21-22.) Specifically, Plaintiff exhibited good musculoskeletal abilities,
10 good range of motion of the spines and joint, no atrophy and no gait abnormalities during
11 multiple examinations.

12       Dr. Ratcliffe submitted three opinions stating that Plaintiff was unable to sustain
13 competitive employment. (Tr. at 23-24, 1051-52, 1205-06, 1210.) In May 2012, Dr. Ratcliffe
14 stated that Plaintiff was unable to work eight hours a day, five days a week on a regular and
15 consistent basis due to lumbar degenerative disc disease, lumbar spondylosis, and pain
16 syndrome. (Tr. at 23-24, 1051-52.) In April 2013, Dr. Ratcliffe submitted another statement
17 that was substantially similar to the 2012 opinion, and he added wrist pain and abdominal
18 wall pain syndrome to his assessment. (Tr. at 1205-06.) In July 2012, Dr. Ratcliffe submitted
19 a statement that Plaintiff would benefit from disability because "return to work at this time
20 is not possible." (Tr. at 1210.)

21       Finding that Dr. Ratcliffe's opinions were not supported by the objective medical
22 evidence of record, the ALJ did not assign his opinions any significant weight. (Tr. at 23-24.)
23 Specifically, although Dr. Ratcliffe reported that Plaintiff suffers from moderately severe
24 pain which prevents him from performing work related activity, the ALJ found that the
25 medical evidence demonstrated that Plaintiff's pain responded well to medications and other
26 treatment. Further, the ALJ found that objective medical imaging did not indicate disabling
27 impairment.

28

Lastly, the ALJ addressed the conclusions reached by the state agency reviewing physicians supporting a finding of not disabled. (Tr. at 24.) The ALJ stated that "[a]lthough these physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve significant weight, particularly in a case like this in which there exists a number of other reasons to reach similar conclusions."

The Court finds that the ALJ properly weighed the medical source opinion evidence, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Ratcliffe's opinions. The ALJ properly discredited the medical opinions due to inconsistencies with Plaintiff's treatment record and the medical evidence as a whole. See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). And, the opinions of the state agency reviewing physicians were consistent with the other objective medical evidence of record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non treating or non examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). Therefore, the Court finds no error.

**B.     Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could

1  reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d
2  1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first
3  test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony
4  about the severity of her symptoms only by offering specific, clear and convincing reasons
5  for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's
6  testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.
7  2007). The ALJ must identify "what testimony is not credible and what evidence undermines
8  the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

9        In weighing a claimant's credibility, the ALJ may consider many factors, including,
10  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,
11  prior inconsistent statements concerning the symptoms, and other testimony by the claimant
12  that appears less than candid; (2) unexplained or inadequately explained failure to seek
13  treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
14  activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-
15  39[2]. The ALJ also considers "the claimant's work record and observations of treating and
16  examining physicians and other third parties regarding, among other matters, the nature,
17  onset, duration, and frequency of the claimant's symptom; precipitating and aggravating
18  factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284
19  (citation omitted).

20        At the hearing, Plaintiff testified that he has been unable to work due to back and leg
21  pain, exacerbated by sitting, standing, walking, and lifting. (Tr. at 40.) Plaintiff explained that
22  he has tried all forms of treatment, including medication, injections, and a back brace, but

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair, 885 F.2d at 603. The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1    prescribed treatment modalities have been largely ineffective. (Tr. at 41-42, 44.) During the
2    day, Plaintiff follows prescribed care and lies down.

3          Plaintiff described low back pain with pain and numbness that radiates down the legs.
4    The radiating pain is sharp, and goes into the toes. (Tr. at 41.) Injections and a TENS unit
5    provided only temporary, if any, relief. (Tr. at 42.) Pain severity will fluctuate between a 5
6    and 7, on a 10 point scale. (Tr. at 43.) On average, Plaintiff can sit for 20-45 minutes at a
7    time, before needing to rise. (Tr. at 45.) He can stand 15 minutes at a time, or walk one-half
8    of a block, and then needs to rest. Lifting is limited 10 pounds. (Tr. at 46.)

9          Plaintiff also discussed his secondary depression as well as anxiety and emotional
10   lability. (Tr. at 49-50.) Relevant symptoms of depression and anxiety include shortness of
11   breath, and a feeling like he is having a heart attack. The severe anxiety symptoms can last
12   5-25 minutes, and they occur 2-3 times daily. Plaintiff has tried marijuana for symptom
13   relief, but it was ineffective. (Tr. at 51.)

14         Having reviewed the record along with the ALJ's credibility analysis, the Court finds
15   that the ALJ made sufficient credibility findings and identified clear and convincing reasons
16   supported by the record for discounting Plaintiff's statements regarding his pain and
17   limitations. Although the ALJ recognized that Plaintiff's medically determinable impairments
18   could reasonably be expected to cause the alleged symptoms, she also found that Plaintiff's
19   statements concerning the intensity, persistence, and limiting effects of the symptoms were
20   not fully credible. (Tr. at 20-21.) "[Q]uestions of credibility and resolutions of conflicts in
21   the testimony are functions solely of the ALJ." Greger v. Barnhart, 464 F.3d 968, 972 (9th
22   Cir. 2006) (citation and internal quotation marks omitted). The court defers to the ALJ's
23   credibility determination "where, as here, the evidence reasonably supports the ALJ's
24   decision." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

25         Significantly, in addressing Plaintiff's credibility, the ALJ relied on several
26   inconsistencies between Plaintiff's statements and the other evidence of record. (Tr. at 21-
27   23.) See 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are
28   conflicts between a claimant's statements and the rest of the evidence). Initially, as the Court

1  has examined above, the ALJ determined that the objective medical evidence and clinical
2  findings did not support the degree of severity alleged by Plaintiff. See Bray, 554 F.3d at
3  1227 (upholding credibility determination where ALJ pointed out that claimant's statements
4  at the hearing did not comport with objective evidence in her medical record). The ALJ
5  stated, "the objective medical evidence does not document that the claimant's impairments
6  are disabling. The claimant exhibited good musculoskeletal abilities, good range of motion
7  of the spines and joint, no significant neurological deficits, no atrophy and no gait
8  abnormalities during multiple examinations. As well, he exhibited good mental status on
9  multiple occasions. Objective imaging and clinical findings did not indicate disabling
10 symptoms. While the claimant's impairments might be expected to impose some limitations,
11 those limitations are adequately accommodated in this decision's residual functional
12 capacity. The need to use a restroom every two hours does not require an unreasonable
13 number or length of breaks." (Tr. at 22.) Further, the ALJ found that the medical evidence
14 demonstrated that Plaintiff's symptoms improved with treatment. (Tr. at 20-24.) Again, as
15 noted above, Plaintiff reported that his pain medication reduced his pain without side effects,
16 and that he received "good benefit" from epidural steroid injections.

17         The ALJ gave other reasons for discounting Plaintiff's credibility. The ALJ analyzed
18 Plaintiff's activities of daily living. (Tr. at 21.) "[I]f the claimant engages in numerous daily
19 activities involving skills that could be transferred to the workplace, an adjudicator may
20 discredit the claimant's allegations upon making specific findings relating to the claimant's
21 daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d
22 at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities
23 suggested a greater functional capacity than alleged). The ALJ found that although Plaintiff
24 testified that he experiences severe musculoskeletal pain which prevents him from
25 performing many activities of daily living, the record revealed that he "leads a more active
26 lifestyle than what he alleged to during the hearing." (Tr. at 21.) Plaintiff reported that he
27 helps care for his children by preparing meals, helping them with homework and getting
28 them ready for school; he is independent in self-care; he drives and rides in a car; he goes

1  shopping in stores; he watches the children all day until his wife gets home from work; and
2  he prepares meals occasionally during the day.

3  While not alone conclusive on the issue of disability, an ALJ can reasonably consider
4  a claimant's daily activities in evaluating the credibility of his subjective complaints. See,
5  e.g., Stubbs-Danielson, 539 F.3d at 1175 (upholding ALJ's credibility determination based
6  in part of the claimant's abilities to cook, clean, do laundry, and help her husband with the
7  finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (upholding ALJ's
8  credibility determination based in part on the claimant's abilities to cook, clean, shop, and
9  handle finances).

10  The ALJ identified other reasons, including, that Plaintiff provided inconsistent
11  reports regarding substance abuse, and testimony suggesting that Plaintiff's unemployment
12  may have been unrelated to his medical impairments. (Tr. at 23); see Molina v. Astrue, 674
13  F.3d 1104, 1112 (9th Cir. 2012) (in considering the claimant's testimony, the ALJ may use
14  ordinary techniques of credibility evaluation, such as a claimant's reputation for
15  truthfulness).

16  In summary, the Court finds that citing to the record, the ALJ identified multiple
17  inconsistencies that undermined the veracity of Plaintiff's allegations. While perhaps the
18  individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to
19  discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it
20  was the cumulative effect of all the factors that led to the ALJ's decision. The Court
21  concludes that the ALJ has supported her decision to discredit Plaintiff's allegations with
22  specific, clear and convincing reasons and, therefore, the Court finds no error.

23  **C.    Lay Witness/Third-Party Statements**

24  Plaintiff contends that the ALJ erred in failing to properly consider the statements of
25  his wife who submitted reports depicting her observations as to Plaintiff's pain and the effect
26  thereof. (Tr. at 245-60, 289-96.) Ms. Kelly noted that her husband has difficulty with
27  prolonged sitting, standing, and walking; and cannot lift much weight. Due to pain, Plaintiff
28  has no consistent daily routine. He needs to periodically rest throughout the day.

1    In determining whether a claimant is disabled, an ALJ must consider lay witness
2 testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113,
3 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
4 2006)). An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557
5 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so
6 only upon providing specific reasons that are "germane to each witness." Id. (quoting
7 Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054. When an ALJ errs in failing "to properly
8 discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider
9 the error harmless unless it can confidently conclude that no reasonable ALJ, when fully
10 crediting the testimony, could have reached a different disability determination." Stout, 454
11 F.3d at 1056.

12    Here, the ALJ considered the third-party statements and found that the statements
13 were not supported by the objective medical evidence. (Tr. at 24.) The ALJ additionally
14 stated that the statements were not persuasive of additional restrictions in Plaintiff's residual
15 functional capacity. The ALJ recognized that Ms. Kelly was concerned for Plaintiff, but
16 stated that the limits she finds were not supported by the objective medical evidence. Lastly,
17 the ALJ stated that Ms. Kelly is not qualified to make a diagnosis regarding Plaintiff's
18 impairments.

19    The Court finds that the ALJ properly considered the third-party statements set forth
20 in the record and appropriately disregarded the statement by providing specific reasons
21 "germane to each witness." See Bayliss, 427 F.3d at 1218 (affirming rejection of lay witness
22 testimony that was inconsistent with claimant's daily activities and objective medical
23 evidence); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (where
24 lay witness testimony was similar to the claimant's own complaints, which the ALJ had
25 discredited for clear and convincing reasons, it followed that the ALJ also gave germane
26 reasons for rejecting the lay testimony).

27    Even if there was a failure to properly discuss the third-party statements, the Court
28 finds that no reasonable ALJ, even if fully crediting the statement, could have reached a

different disability determination. The limitations and symptoms contained in the third-party statement are entirely similar to and consistent with, those which Plaintiff described in his own testimony. As a result, because this Court concludes that the ALJ's decision to discredit Plaintiff's testimony was supported by substantial evidence, and because the third-party statement was consistent with Plaintiff's testimony, it was reasonable for an ALJ to disregard that statement as well.

## V. CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 26th day of September, 2016.

Michelle H. Burns
United States Magistrate Judge